UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CALLIE GABLE, | ) | |
|        Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-2056 RLY-WTL |
| | ) | |
| MIDWEST EYE INSTITUTE, INC., | ) | |
|        Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Callie Gable, is a former employee of Defendant, Midwest Eye Institute, Inc. ("MEI").  Plaintiff claims that she was terminated from her Office Manager position and not considered for a position created after her termination because she was pregnant. Plaintiff also claims that MEI broke its promise to her by failing to consider her for a newly-created position.  MEI now moves for summary judgment.  For the reasons explained below, the court **GRANTS** MEI's motion for summary judgment.

**I.     Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "genuine" where the evidence "is such that a reasonable jury could return a verdict for the non-moving party."

*Id.*

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* If the non-moving party fails to make a sufficient showing on an issue to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Ripberger v. Western Ohio Pizza, Inc.*, 908 F.Supp. 614, 617 (S.D. Ind. 1995) (*citing Celotex Corp.,* 477 U.S. at 323). "If, however, doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the non-moving party and summary judgment denied." *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

II.    **Facts**[1]

A.    **Background of MEI**

1.    MEI is a specialty eye care medical provider.  (Declaration of Barbara Bernhard ("Bernhard Dec.") ¶ 3).

2.    The Pediatric Ophthalmology Group at MEI (the "Practice") specializes in the eye problems of children.  (Bernhard Dec. ¶ 5).

3.    The Practice employs four physicians – Dr. Derek Sprunger, Dr. David Plager, Dr. Gavin Roberts, and Dr. Naval Sohndi.  (Deposition of Callie Gable ("Gable Dep." at 75-76).

4.    In 2004, 97 of MEI's 120 employees were female.  (Bernhard Dec. ¶ 8).

5.    MEI specifically pays for a disability policy which includes pregnancy as a short term disability and pays benefits during maternity leave.  (Bernhard Dec. ¶ 9).

6.    From 2002-2004, MEI had 16 employees who became pregnant.  Of those, 12 employees returned to work and three chose to remain home with their babies. (Bernhard Dec. ¶ 12).

7.    In its 25 years of practice, MEI never terminated an employee other than Plaintiff who was pregnant.  (Bernhard Dec. ¶ 13).

---

[1] In its Reply,  Defendant moves to strike Plaintiff's Exhibits B, C, D, F, and G, on grounds that these Exhibits are hearsay and not properly authenticated.  The court has reviewed these Exhibits, and does not find that they are material to the outcome of this case.  Accordingly, the Exhibits were not considered by the court in reaching its decision on MEI's Motion for Summary Judgment.

**B.    Plaintiff's Job Responsibilities**

8.    On March 19, 2003, MEI hired Plaintiff for the position of Office Manager.

       (Gable Dep. at 75; Declaration of Dr. Derek Sprunger ("Sprunger Dec.") ¶ 5).

9.    Along with the physicians, Plaintiff was responsible for running the Practice.  A

       significant part of her job involved managing the billing and accounts receivable.

       (Gable Dep. at 76-77).  Plaintiff was also responsible for maintaining the

       physician's credentials with the insurance companies, their medical licenses, and

       their medical malpractice coverage.  (Gable Dep. at 78-80).  Plaintiff had the

       additional responsibility of maintaining the physicians' Federal Drug Enforcement

       certificates.  (Gable Dep. at 78-80).

**C.    Plaintiff's Performance Problems**

10.   The Practice had constant billing problems during Plaintiff's employment.  (Gable

       Dep. at 99).  For example, because MEI had different locations, there were times

       when the physician's Medicare provider number did not match the particular

       location where the services were rendered.  When this happened, the Practice

       would not get paid for the services.  Plaintiff recognized this problem, but she had

       not rectified it by the time MEI and the Practice terminated her employment.

       (Gable Dep. at 99, 102).

11.   In addition, there were accounts receivable problems during her employment.

       (Gable Dep. at 110).  For example, in the Fall of 2003 the Practice determined that

       its accounts receivable were uncharacteristically high, despite no significant

4

increase in the Practice's charges for services rendered.  For the quarter in which Plaintiff's employment with the Practice began (January - March 2003), only .4% of the Practice's charges for services rendered for the quarter remained in accounts receivable.  This percentage steadily increased over the course of the year.  In the second quarter of 2003, 6% of the Practice's charges for services rendered for the quarter remained in accounts receivable.  In the third quarter of 2003, 16% of the Practice's charges for services rendered for the quarter remained in accounts receivable.  By the fourth quarter of 2003, 32% of the Practice's charges for services rendered for the quarter remained in accounts receivable.  (Sprunger Dec. ¶ 8).

### D.     Plaintiff's Other Performance Problems

12.   In April 2003, before he began with the Practice, Dr. Roberts asked Plaintiff to make sure the credentialing with various insurance companies proceeded smoothly.  (Declaration of Dr. Gavin Roberts ("Roberts Dec.") ¶ 3; Gable Dep. at 113).

13.   In July 2003, Dr. Roberts recognized that Plaintiff either had not addressed or had improperly addressed his credentialing with several insurance companies.  As a result, the Practice did not get paid for many of the patients Dr. Roberts saw during his first several months of practice.  (Roberts Dec. ¶¶ 5-6).

14.   In October 2003, Dr. Roberts learned that Plaintiff had not paid his medical malpractice premium.  As a result, Dr. Roberts had to take the initiative to ensure

that his coverage did not lapse.  (Roberts Dec. ¶ 7).

### E.   The Practice Outsources its Billing Functions

15.   In the fall of 2003, the Practice noticed that its revenues were significantly lower than normal.  (Sprunger Dec. ¶ 7).

16.   The physicians also began noticing problems with their credentialing.  (Sprunger Dec. ¶ 9).

17.   At one point they asked Plaintiff for reports on which insurance companies they were contracted with and for how long the contracts were valid.  Plaintiff never provided the information.  (Sprunger Dec. ¶¶ 10-11).

18.   In November 2003, because the physicians were concerned about Plaintiff's ability to oversee the billing and collection duties for the Practice, they decided to outsource the billing functions to a third party as of January 1, 2004.  (Sprunger Dec. ¶ 13).

19.   MEI and the Practice also decided in December 2003 that they would eliminate Jennifer Grimm's position as the billing clerk because all of her duties had been outsourced effective January 1, 2004.  Grimm was not pregnant.  (Sprunger Dec. ¶ 14).

### F.   MEI Hires an Outside Consultant

20.   In December 2003, the Practice hired an outside consultant, Mary DeRemer, to assist it with the transition of billing and accounts receivable to the third party. (Sprunger Dec. ¶ 15).

21.  DeRemer discovered that the accounts receivable were over $1,300,000, and that numerous pending invoices were over a year old.  (Declaration of Mary DeRemer ("DeRemer Dec.") ¶ 3).

22.  DeRemer noticed that Dr. Roberts had not been credentialed for at least 90% of the insurance companies.  (DeRemer Dec. ¶ 7).

23.  DeRemer also discovered that CIGNA had been routinely denying the Practice's requests for payments because Plaintiff had not properly credentialed Dr. Roberts, Dr. Sprunger, and Dr. Sondhi.  (DeRemer Dec. ¶ 9).

24.  DeRemer also reported to the Practice that Plaintiff had done nothing to follow up with pending invoices.  (DeRemer Dec. ¶ 10).

### G.  MEI and the Practice Terminate Plaintiff

25.  By January 2004, a significant portion of Plaintiff's duties as Office Manager had been eliminated.  (Sprunger Dec. ¶ 19).

26.  The Practice also learned from DeRemer of all the problems she had discovered, outlined above.  (Sprunger Dec. ¶¶ 15-16).

27.  On January 26, 2004, MEI and the Practice terminated Plaintiff's employment.  (Complaint ¶ 12).

28.  During the termination meeting, the Practice told Plaintiff that because the outsourcing was going to cost so much money, it needed to eliminate the Office Manager position.  (Gable Dep. at 162).

29.  The Practice determined that it needed someone who was primarily a personnel

manager.  (Sprunger Dec. ¶ 21).

30.    The Practice told Plaintiff that it would consider her if it reinstated the Office

Manager position.  (Gable Dep. at 163).

### H.    The Practice Creates a New Office Coordinator Position

31.    On April 5, 2004, the Practice hired Kelly Grabman for the position of Officer

Coordinator –  a new position one level below where Plaintiff had been assigned.

(Sprunger Dec. ¶ 28; Plaintiff's Ex. G).

32.    Grabman was not pregnant at the time she was hired by MEI.

33.    The Office Coordinator position is not responsible for any billing or collection

duties.  (Sprunger Dec. ¶ 30).

## III.  Discussion

### A.    Discriminatory Termination

Plaintiff claims MEI terminated her because she was pregnant.  The Pregnancy

Discrimination Act clarified that discrimination based upon pregnancy was prohibited by

Title VII's ban on sex discrimination.  42 U.S.C. § 2000e(k).

Because Plaintiff has no direct evidence of discrimination, she must proceed under

the indirect, burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).  This requires Plaintiff to present a prima facie case of discrimination by

establishing that: (1) she was pregnant and MEI knew that she was pregnant; (2) she was

performing her duties satisfactorily; (3) she was discharged; and (4) similarly situated

employees outside the protected class were treated more favorably.  *Clay v. Holy Cross*

*Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). If Plaintiff presents a prima facie case of discrimination, the burden of production shifts to MEI to articulate a legitimate, non-discriminatory reason for her termination. *Id.* Once MEI presents its legitimate reason, the inference of discrimination disappears, and Plaintiff must prove by a preponderance of the evidence that MEI's proffered reason was a pretext for intentional discrimination. *Id.* The ultimate burden to prove intentional discrimination remains with Plaintiff. *Id.*

### 1.   Legitimate Expectations

Plaintiff cannot establish the second element of her prima facie case. Plaintiff does not dispute the numerous instances where she failed to perform her job duties, including her failure to properly credential physicians; to properly manage the billing and accounts receivable; and to maintain the physicians' medical malpractice premiums. Plaintiff does not dispute that as a result of her poor performance, the Practice was losing significant funds because of her failure to properly manage the billing.

Moreover, it was Plaintiff's failure to perform her job that caused the Practice to outsource the billing and accounts receivable functions – the primary duties of Plaintiff's position – and then to eliminate Plaintiff's Office Manager position.

Accordingly, the court finds that Plaintiff has failed to show that she was performing to MEI's legitimate expectations.

### 2.   Similarly Situated Employees

Plaintiff also cannot establish the fourth element of her prima facie case  – i.e., that she was treated less favorably than similarly situated employees outside of her protected

class.  To be similarly situated, an employee must be "directly comparable in all material respects."  *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005) (quoting *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004).  "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also to show that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Id*. at 960-61 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

Here, Plaintiff contends she was replaced by Kelly Grabman.  Plaintiff admits, however, that she has no personal knowledge of the duties Grabman allegedly performs and whether she actually replaced her.  (Gable Dep. at 178-79).  This is insufficient to dispute MEI's admissible evidence establishing that Grabman did not replace Plaintiff, and instead assumed a brand new position, which did not entail billing or collection duties, that was a level below where Plaintiff had been assigned.  Because the position that Grabman was hired to perform is not Plaintiff's Office Manager position, Grabman is not similarly situated to Plaintiff.  *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 726-27 (7th Cir. 1998) (replacement attorney hired while plaintiff was on pregnancy leave and retained after plaintiff's discharge was not similarly situated to plaintiff where replacement earned less and performed more limited scope of legal work for law firm).

Moreover, the only employees responsible for billing and accounts receivable were

10

Plaintiff and Jennifer Grimm.  It is undisputed that Grimm lost her job due to outsourcing.

Grimm was not pregnant at that time.

Accordingly, the court finds Plaintiff has failed to show that similarly situated

employees were treated more favorably.

**B.      Breach of a Promise**

Plaintiff also alleges that the Practice broke its promise to consider her if it ever

reinstated her position.  Plaintiff contends this is evidence that the Practice treated

Grabman more favorably than her.  MEI contends that this allegation is actually a

separate claim for breach of contract.  The court finds that under either theory, Plaintiff's

claim fails.

First, as stated above, the position filled by Grabman is not the same position

formerly held by Plaintiff.  Thus, they are not similarly situated.  Second, assuming this is

a breach of contract claim, the Practice never reinstated Plaintiff's Office Manager

position with the same duties and cost to the Practice.  Thus, under either theory,

Plaintiff's claim fails as a matter of law.

**IV.    Conclusion**

For the reasons stated above, the court **GRANTS** Defendant's Motion for

Summary Judgment.


**SO ORDERED** this  13th   day of September 2006.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

Blake J. Burgan
SOMMER BARNARD ATTORNEYS, PC
bburgan@sommerbarnard.com

John H. Haskin
HASKIN LAUTER LARUE & GIBBONS
jhaskin@hlllaw.com

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Michael C. Terrell
SOMMER BARNARD ATTORNEYS, PC
mterrell@sommerbarnard.com